UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. HUNTER,                           :
                                            :
              Petitioner                    :
        v.                                  :   CIVIL NO. 1:10-CV-0137
                                            :
B. A. BLEDSOE,                              :   (Judge Caldwell)
                                            :
              Respondent                    :

*M E M O R A N D U M*

I.   *Introduction*

Pending before the court is the habeas corpus petition of Steven M. Hunter challenging two decisions by the United States Parole Commission, in 2009 and 2010, denying him parole.[1]  For the reasons set forth below, the court will deny the petition.

II.   *Standard of Review*

In pertinent part, under U.S. Const. Art. III, § 2, a federal court is limited to deciding "Cases" or "Controversies."  *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998).  In habeas actions, the case-or-controversy requirement mandates that a petitioner must have suffered, or be threatened with, an actual injury traceable to the respondent and redressable by issuance of the writ.  *See Id.*; *Burkey v.*

---

[1]  The petition was filed under 28 U.S.C. § 2241. Because Petitioner's sentence was imposed by the Superior Court of the District of Columbia, he is considered a state prisoner for federal habeas purposes. *See Wilson v. U.S. Parole Comm'n*, __ F.3d __, __, 2011 WL 2937277, at *3 (3d Cir. 2011)(citing *Madley v. U.S. Parole Comm'n,* 278 F.3d 1306, 1309 (D.C. Cir. 2002), and *Robinson v. Reilly*, 340 F. App'x 772, 773 (3d Cir. 2009)(per curiam)(nonprecedential)). He must therefore rely on the habeas provision applicable to state prisoners, 28 U.S.C. § 2254, not on § 2241. *Id*. The instant petition will therefore be construed as one under § 2254. This means Petitioner must receive a certificate of appealability in order to pursue an appeal. *Id.*; 28 U.S.C. § 2253(c)(2).

*Marberry*, 556 F.3d 142, 147 (3d Cir. 2009). If developments occur during the course of a case that prevent a court from granting the requested relief, the case must be dismissed as moot. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010)(citing *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001)).

On a habeas challenge to denial of parole, a federal district court may not grant parole or determine parole eligibility. *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2nd Cir. 1976). "The only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody." *Id* at 944; *see also Bridge v. U.S. Parole Comm'n*, 981 F.2d 97 (3d Cir. 1992).

III.  *Hunter's Criminal History and Parole Proceedings*

  A.  *Hunter's Criminal History*

On the evening of May 27, 1995, Hunter unlawfully entered the home of his former girlfriend. He entered her bedroom and found her sleeping in bed with another individual. Hunter commenced beating her companion about the head, face and body with a sawed-off shotgun. Doc. 67-1, Exs. to Resp. to the Am. Habeas Corpus Pet. at ECF p. 5.[2] Hunter then fired one shot at the victim and fled the apartment leaving his victim unconscious, with a gunshot wound to his left arm and a fractured skull and jaw. *Id*.

---

[2] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (ECF) rather than the page numbers of the original documents.

Following this assault, Hunter contacted his former girlfriend several times by telephone, warning her, "See what you made me do to your boy!  If you tell the police, you're next!  If you testify, I'm going to kill you!" *Id*.

On February 1, 1996, Hunter was sentenced to an aggregate term of imprisonment of ten years and four months to thirty-one years by the District of Columbia Superior Court following his conviction for assault, first-degree burglary, assault with a dangerous weapon, aggravated assault while armed, and possession of a firearm during a crime of violence.  *Id.*   Hunter became eligible for parole on this sentence on January 14, 2004.  *Id*. at p. 4.

### B.   *Hunter's Parole Proceedings*

The Commission conducted its initial hearing on Hunter's case on February 17, 2005.  *Id.* at p. 9. The Commission denied Hunter parole, and ordered a rehearing in 2008.  *Id.* at p. 16.  It held another hearing on July 30, 2008, at which time it again denied Hunter release on parole, and ordered a rehearing in three years.  *Id*. at p. 21.

On June 12, 2009, the Commission reopened Hunter's case to conduct a new parole hearing, using the 1987 guidelines of the D.C. Board, and the 1991 policy guidelines relating to the transfer of paroling authority from the D.C. Board to the United States Parole Commission.  *Id*. at p. 22.  The hearing was scheduled to address Hunter's claims that the Commission violated the Constitution's *ex post facto* clause by erroneously applying improper parole guidelines to his case.  See *Hunter v. Parole Commission,* 406 F.App'x 879 (5th Cir. 2010); *Hunter v. Parole Commission*, 308 F. App'x 856 (5th Cir. 2009); *Hunter v. Parole Commission*, No. 06-1745, 2009 WL 3853378 (W.D. La. Nov. 17,

2009); *Hunter v. Parole Commission,* No. 06-1745, 2006 WL 3861771 (W.D. La. Dec. 8, 2006).

On July 27, 2009, the Commission conducted a hearing in Hunter's case, using the 1987 guidelines and the Commission's 1991 policy,. *Id*. at p. 30.  At this hearing, the Hearing Examiner found that Hunter had a grid score of 2 points under the 1987 guidelines, a score which provided for parole eligibility in the ordinary case.  *Id*. at p. *29.*  The Hearing Examiner, however, departed from the guidelines recommendation, citing both the brutality of Hunter's crime and his history of unrelenting violence in prison, both of which strongly suggested that Hunter presented an immediate and grave danger to others.  The Commission found:

> [A] departure from the guidelines at this consideration is found warranted because you are a more serious risk that indicated by the Grid Point Score because your instant offense of conviction involved unusual cruelty to the victim.  Specifically, you broke into the apartment where the victim and the eyewitness were asleep.  You beat the victim severely with a shotgun causing fracture to the skull and jaw and then you shot the victim from point blank range with [the] shotgun.  This action could have caused the death of the victim.  Additionally, you threatened to kill the eyewitness if she testified in court.
>
> You are also a more serious risk than indicated by your Grid Point Score based on your serious negative institutional adjustment.  In the last year alone, you have [incurred] seven DHO level infractions that would be rated as Class I and Class II offenses, including Interfering with Staff, Possession of a Weapon, Three Class II Assaults, and several other Class II offenses.  Most of this serious institutional misconduct was carried [out] in anger and in retaliation to Bureau of Prisons Staff.  Regarding the fighting and assaultive conduct, you continued to blame other people for you having committed these infractions.
>
> The above institutional infractions and your response to those infractions at today's hearing indicates that you have poor impulse control and poor anger management skills, both of which

make you a danger to the community if you are paroled.

*Id*. The Commission decided to re-examine Hunter's case twelve months from his last hearing. *Id*. It was recommended that Hunter remain incident free and enroll in and complete meaningful programs aimed at controlling his anger. *Id*.

Hunter's next parole hearing was held on July 27, 2010. *Id*. at p. 37. Hunter was represented by counsel at this hearing. *Id*. at p. 32. In the twelve months since his last hearing, Hunter had amassed seven additional incident reports, including one for possession of a dangerous weapon and threatening bodily harm, and three others for threatening bodily harm. *Id*. at pp. 33-34. Hunter's grid score was calculated as 2 points, a score which would make Hunter parole eligible under the 1987 guidelines. *Id.* at p. 37. However, presented with Hunter's continuing institutional violence, the Hearing Examiner recommended a denial of parole, and continuance to a rehearing in eighteen months, based upon the risk Hunter's conduct posed to others. *Id*. The Commission cited the following reasons for denying Hunter parole:

> You have a total point score of 2 under the 1987 [D.C.] Board guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonably probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score because your instant offense of conviction involved unusual cruelty to the victim. Specifically, you broke into the apartment while the victim and an eyewitness were sleeping. You beat the victim severely with a shotgun causing a fracture to the skull and jaw and then you shot the victim from point blank range with the shotgun. This action could have resulted in the death of the victim. Additionally you threatened to kill the eyewitness if she testified in court. You are also a more serious risk than indicated by your Grid Score based on your

>   serious negative institutional adjustment. In the last year alone you incurred a total of eight DHO level infractions, five of which would be rated as Class II infractions: Threatening Bodily Harm, Interfering with Security Device, Attempt Assault without Serious Injury, and additional disruptive behavior. One discipline report would be rated as a Class I infraction, Possessing a Dangerous Weapon. Your discipline behavior shows a lack of self-control to follow institutional rules which indicates that you would be a risk upon release to the community.
>
>   The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted for the same reasons provided above for denying parole.

*Id*. The Commission, in the exercise of its discretion, extended Hunter's parole reconsideration date beyond the Hearing Examiner's recommendation of eighteen months to thirty-six months. *Id*.

IV.  *Discussion*

   A.  *Hunter's Claims Challenging his 2010 Hearing Are Procedurally Barred*

   To the extent that Hunter challenges the Commission's actions with respect to his 2010 hearing, these claims are duplicative of the claims presented in *Hunter v. U.S. Parole Com'n*, No. 1:10-CV-1594, 2011 WL 4528469 (M.D. Pa. Sept. 28, 2011). In that habeas matter, the undersigned reviewed the Commission's decision with respect to Hunter's most recent parole rehearing in July 2010. *Id*. at *6-9. We did not find that the Commission abused its discretion in that matter and denied Hunter habeas relief. Accordingly, as we have already denied Hunter's challenge to his 2010 parole rehearing on the merits, we will not re-exam those claims here. *See* 28 U.S.C. § 2244(a).

>   B.   *The Court is Precluded from Granting any Relief with Respect to Hunter's Challenge to the 2009 Rehearing.*

The record is clear; following the denial of parole in 2009, Hunter was granted a rehearing in 2010. As we have previously ruled, any inequities that occurred at the July 2009 hearing, would have only entitled Hunter to a new parole hearing. *See Wilkinson v. Dotson*, 544 U.S. 74, 82, 125 S.Ct. 1242, 1248, 161 L.Ed.2d 253 (2005)("Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application.")(emphasis in original)); *see also Sellmon v. Reilly*, 551 F. Supp. 2d 66, 84 (D.D.C. 2008). Petitioner has already had a new hearing, the one conducted in July 2010. Thus, his challenge to the 2009 hearing is now moot; any abuse of discretion by the Commission in conducting Hunter's 2009 rehearing cannot be remedied by the court as he has already received a subsequent rehearing denying him parole, a rehearing that has been reviewed by this court and found to be supported by a rational and reasonable basis in the record.

V.   *Conclusion*

For the foregoing reasons, Hunter's petition for a writ of habeas corpus will be denied. Because Petitioner is in custody by virtue of a District of Columbia judgment, he is regarded as a state prisoner for habeas corpus purposes, and thus must obtain a certificate of appealability to pursue an appeal. *See Wilson v. U.S. Parole Comm'n*, __ F.3d __, __, 2011 WL 2937277, at *3 (3d Cir. 2011). Because Petitioner has not made a substantial showing of the violation of a constitutional right in connection with the adverse

parole decisions, 28 U.S.C. § 2253(c)(2), a certificate of appealability will not be issued. However, our denial of a certificate of appealability does not mean Petitioner cannot appeal our ruling.  He may do so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

   An appropriate order follows.

                 /s/ William W. Caldwell
                 William W. Caldwell
                 United States District Judge

Date: October 12, 2011

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN M. HUNTER, :
:
        Petitioner :
   v. : CIVIL NO. 1:10-CV-0137
:
B. A. BLEDSOE, : (Judge Caldwell)
:
        Respondent :

*O R D E R*

AND NOW, this 12th day of October, 2011, it is ordered that:

  1.  The Amended Petition for Writ of Habeas Corpus (Doc. 62) is denied.

  2.  A certificate of appealability is denied.  *See* 28 U.S.C. § 2253(c).

  3.  The Clerk of Court is directed to close this case.

                               /s/ William W. Caldwell
                               William W. Caldwell
                               United States District Judge